UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shenzhen Li Ying Electronic Technology Co., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified on Schedule "A", <br><br> Defendants. | Case No.: 1:23-cv-00244 <br><br> Hon. Judge John Robert Blakey <br><br> Mag. Judge Jeffrey Cole |

**Defendants' Motion to Dissolve Preliminary Injunction**

**NOW COME** certain defendants[1] (hereinafter "Defendants"), by and through their undersigned counsel, and hereby move to dissolve the preliminary injunction in its entirety, and state as follows:

**I. Factual and Procedural Background**

Plaintiff filed their Complaint on January 17, 2023, alleging trademark infringement, trademark dress infringement and false designation of origin, and violations of Illinois Uniform Deceptive Trade Practices Act. [Dkt. 1]. On the same day, Plaintiff filed an *ex parte* motion for a temporary restraining order which was granted January 31, 2023. [Dkts. 6, 28]. Plaintiff filed a motion for preliminary injunction, which was granted on February 22, 2023. [Dkts. 35, 40].

The trademark at issue in the current case is for "T6" (Reg Nos. 5,712,352, 5,712,353, 5,712,354) which purport to cover, *inter alia*, lightbulbs. However, T6 is merely a size designation for lightbulbs, and Defendants were using the term not as a source identifier, but rather in a descriptive sense which constitutes fair use. What's more, the registered trademarks are merely descriptive of lightbulbs and lack secondary meaning and are therefore unprotectable.

---

[1] bestwh, enjoywh_2020, gardenhomeseller, magnetstock, benefitup, weareontheway, ye87ra113, vaseflower268, elepart-replace2017, safeshuu, dc_bigshop1, us_bigsaleshop, dazone01, xinyi-001, elitestore20, crazymall89, 2fast2easy4you, passionteam, Unitskysky, vpackwell4u, Uksalesqueen, createunion, Itemmountain, grace4world, Milkeyworld, and morningjade

Page 1

The preliminary injunction entered resulted in the freezing of assets belonging to Defendants and has prevent Defendants from selling their lawful products. Defendants, seriously impacted by this crippling preliminary injunction, are suffering and will continue to suffer serious harm due to their inability to access their funds, their lost sales, lost reviews, and loss of overall market goodwill necessary for a competitive storefront. Further, if the injunction continues, Defendants may be forced to take emergency loans on highly unfavorable terms and/or pull money out of their saving accounts to pay supplier and continue operations. Plaintiff cannot show a reasonable likelihood of success on the merits, and for this reason alone, the preliminary injunction should be dissolved in its entirety. *See*, <u>LG ELECTRONICS INC. AND LG ELECTRONICS ALABAMA, INC., v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A</u>, Case No. 21-cv-2600, [Dkt. 37] (N.D. Ill. June 17, 2021) (dissolving TRO on emergency basis and ordering that Amazon.com "**immediately** unfreeze and relist on Amazon.com the Moving Defendants' Amazon storefront accounts previously frozen by order of this court") (emphasis in original).

**II. <u>Argument</u>**

    **a. Legal Standard**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). Further, the preliminary injunction should also be tailored to the violation. <u>Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd.</u>, 496 F.3d 769, 772 (7th Cir. 2007). In order to properly receive a preliminary injunction, Plaintiff must have demonstrated by a <u>clear</u> showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the

merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984), *citing*, In re Uranium Antitrust Litigation, 617 F.2d 1248, 1261 (7th Cir. 1980). The movant "bears the burden of persuasion with regard to each factor in the preliminary injunction relief analysis" and if it "fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." Smith v. Foster, 2016 WL 2593957 (E.D. Wis. May 5, 2016), *quoting*, Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir. 1989). The strength, or lack thereof, of Plaintiff's likelihood of success on the merits affects the balance of harms. Illinois League of Advocates for the Developmentally Disabled v. Illinois Dept. of Human Servs., 60 F. Supp. 856, 889 (N.D. Ill. 2014).

### b. Plaintiff cannot show a reasonable likelihood of success on the merits because Defendants did not use the Mark as a source identifier.

All Defendants are involved in this case as a result of their offer for sale of flashlights that "use" the term T6 in the listing title. **Exhibits A - AB**. Defendants' uses of the term T6 were not as a source identifier, however; rather it is simply descriptive of the products' light bulb shape and size and constitutes fair use. *See*, Packman v. Chi Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) (observing that when no likelihood of consumer confusion exists, the defendants are often found to be fair use). Statutory fair use serves as a complete defense to a claim for trademark infringement if the Defendant can show: (i) it did not use the mark as a trademark; (ii) the use is descriptive of its goods; and (iii) it used the mark fairly and in good faith. Packman, 267 F.3d at 639.

#### i. *Defendants did not use "T6" as a trademark.*

Words or phrases are "used" as trademarks" when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." SportFuel, Inc. v. PepsiCo, Inc., 932 F.3d 589, 596 (7th Cir. 2019) (internal citations omitted). To decide whether a term is being

used as a trademark , the Seventh Circuit assesses multiple factors, including: (1) whether the phrase is used with a company's "house mark"; (2) how prominently it is displayed compared to the house mark; (3) whether the phrase is used on all of its product packaging, or only in certain advertisements; and (4) whether the slogan is "catchy" - that is, whether it is meant to stick in a customer's head and create an association with the source. Id. at 598.

Evaluating these factors, and reviewing Plaintiff's own evidence files, it is clear that Defendants displayed the term "T6" not as a source identifier, but rather to describe the light bulb shape and size incorporated into their products. *See*, **Exhibits A - AB**. Defendants use the term "T6" within a string of other terms descriptive of the light bulb in their products such as "LED," "Rechargeable," "USB," and "COB," thus customers would recognize "T6" as one of those descriptive terms and not as a source identifier. *See*, Bell v. Harley Davidson Motor Co., 539 F. Supp. 2d 1249, 1258 (S.D. Cal. 2008) (holding that defendant did not used terms as a trademark in part because they did not put allegedly infringing mark on its merchandise where one would expect to find the source-identifiers of a product). Further "T6" is not displayed any larger or smaller than other words in the title, which suggests to a reader that it is no more or less important than the rest of the words in the product listing titles. *See*, Milo Enterprises, Inc. v. Bird-X, Inc., 2022 WL 874625 at *6 (N.D. Ill. Mar. 24, 2022) (finding that a phrase that was not displayed any larger or smaller than other words in the product name or description suggested that the phrase was not being used as a trademark). Furthermore, nothing about Defendants' inclusion of the term "T6" stands out as catchy, playful, rhyming, or rhetorical in a way that is intended to create "a memorable slogan that is uniquely associated with [Plaintiff's] product." Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 954 (7th Cir. 1992). Accordingly, the first element weighs in favor of finding fair use.

   *ii. Defendants' use of "T6" was descriptive of their goods.*

Phrases are "descriptive" within the meaning of the fair use exception where the term "names a characteristic of a product or service." Sorensen v. WD-40 Co., 792 F.3d 712, 724 (7th Cir. 2015). Descriptive use of a term is not a trademark violation; "[t]his rule ensures that competitors can market their products by describing them.... [and] reflects that descriptors are a poor means to distinguish among competing products." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 420 (7th Cir. 2019) (citations omitted). The test of descriptiveness is "one of consumer perception - how is [the term] perceived by the average prospective consumer?" Sands, Taylor & Wood Co., 978 F.2d at 953 (quotation and emphasis omitted).

In the context of lightbulb products, the "T" is short for Tubular. The number is the diameter of the lamp in eighths."[2] T6 is an industry standard designation for a certain size of light bulb.[3] Accordingly, an average consumer would perceive the term T6 as a description of the type and size of the lightbulb in Defendants' products. In fact, companies such as Home Depot,[4] Lowes,[5] and Walmart[6] allows users to select "T6" as a "Light Bulb Shape Code" to narrow their search to lightbulbs of this specific type and size.

This conclusion is further supported by the fact that the term "T6" is used within a string of other terms descriptive of the light bulb in their products such as "LED," "Rechargeable," "USB," and "COB," and because many of the product description sections use the term T6 to describe the model, and not to describe the brand. Accordingly, the second element weighs in favor of finding fair use.

    *iii. Defendants used the term T6 fairly and in good faith.*

---

[2] https://www.commercialbulbs.com/resources/shapes_and_bases
[3] https://www.commercialbulbs.com/resources/shapes_and_bases
[4] https://www.homedepot.com/b/Lighting-Light-Bulbs-LED-Light-Bulbs/T6/N-5yc1vZbm79Z1z0vvr2
[5] https://www.lowes.com/pl/T6--Light-bulbs-Lighting-ceiling-fans/4294801215?refinement=3500580682
[6] https://www.walmart.com/c/kp/t6-light-bulbs

The good faith element of the fair use defense "look[s] to [the alleged infringer's] subjective purpose in using a slogan." SportFuel, 932 F.3d at 600. Defendant's good faith may be judged "only by inquiry into its subjective purpose in using" the phrase. M. B. H. Enters., Inc. v. WOKY, Inc., 633 F.2d 50, 54 (7th Cir. 1980). "[T]he standard for good faith for fair use…asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." Int'l Stamp Art, Inc. v. United States Postal Serv., 456 F.3d 1270, 1274-75 (11th Cir. 2006) (citing cases from five other circuits, including the Seventh Circuit).

Defendants only used the term T6 in a descriptive sense to describe the products at issue and did not intend to trade on the good will of Plaintiff or create confusion as to the source of the goods. None of the Defendants include T6 in the "Brand" category of the item description, and even some Defendants include the term "T6" in the LED or model category, which further supports the conclusion that Defendants merely used the term in a descriptive sense.[7] *See, e.g.*, [passionteam] ("Model of LED Bears: T6"); [milkeyworld] ("Model Louts T6 Led Flashlight"); [vpackwell4u] ("Model: T6 led flashlight"); [gardenhomeseller] ("5X T6 LED"); *See, e.g.*, **Exhibits E, G, I, M**. Accordingly, because Defendants did not use the mark as a source-identifier, they did not use the mark to capitalize on Plaintiff's good will. *See*, Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 925 F. Supp. 2d 1067, 1076 (C.D. Cal. 2012) ("Because Defendants are not using the mark as a source-identifier…they did not use the mark intending to capitalize on Plaintiff's good will.").

Accordingly, all three factors weigh in favor of finding fair use and Plaintiff is highly unlikely to succeed on the merits of its trademark infringement claims against Defendants, and there is no colorable argument that the extraordinary relief of a preliminary injunction is warranted. Packman, 267 F.3d at 639; Weifang Tengyi Jewelry Trading Co., Ltd., v. Intuii LLC, Jens Sorensen, *et al.*, Case

---

[7] https://insights.regencylighting.com/how-to-read-a-light-bulb-part-number-linear-fluorescent-tubes#:~:text=Linear%20fluorescent%20lamps%20typically%20include,the%20diameter%20of%20the%20tube.Bulb shape

No. 18-cv-04651, Dkt. 44 (N.D. Ill. August 17, 2018) (J. Feinerman) (granting defendants motion to lift the TRO arguing that if Plaintiff cannot demonstrate a likelihood of success on the merits the balance of harms weighs in favor of the defendant).

## c. Plaintiff cannot show a reasonable likelihood of success on the merits because the asserted Marks are unprotectable.

Courts have the authority to cancel invalid marks. 15 U.S.C. § 1119. Indeed, in such circumstances "cancellation is not merely appropriate, it is the best course." Cent. Mfg., Inc. v. Brett, 492 F.3d 876, 883 (7th Cir. 2007). A registered mark may be canceled at any time for genericness; a descriptive mark may be cancelled if the challenger shows that it lacks secondary meaning and provided the mark has not become incontestable by remaining in continuous use for five years from its date of registration. Uncommon, LLC v. Spigen, Inc., 305 F. Supp. 3d 825, 854 (N.D. Ill. 2018).

Here, Plaintiff's marks were all registered April 2, 2019, less than five years ago, thus the mark has not become incontestable, and the Court may cancel a merely descriptive mark. Plaintiff's registered mark is entitled to a presumption of validity, however Defendants may overcome that presumption "with evidence that the mark is generic or descriptive, or that it lacks secondary meaning." Uncommon, LLC, 305 F. Supp. 3d at 854, *citing*, Packman, 267 F.3d at 639). Defendants bear the burden of demonstrating that the mark is either generic or descriptive, and, if descriptive, that it lacks secondary meaning. Id.

Here, Plaintiff's mark is at most merely descriptive of lightbulb products. A descriptive mark "ordinarily names a characteristic of a product or service." Sorensen v. WD–40 Co., 792 F.3d 712, 724 (7th Cir. 2015). Descriptive terms "are generally not protectable as trademarks," in part "because they are poor means of distinguishing one source of services from another." Liquid Controls, 802 F.2d at 936. A seller cannot appropriate as the name of its brand a term that describes the product to the public - for then other sellers would have difficulty describing similar products

and competition would be impaired. Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481, 483 (7th Cir. 2007). In other words, a seller cannot hijack the English language. Id.

In the context of lightbulb products, the "T is short for Tubular. The number is the diameter of the lamp in eighths."[8,9] Accordingly, the term "T6" merely describes the characteristics of a lightbulb, namely its size and type. Courts have repeatedly found that type and size designations are merely descriptive. See, e.g., Ideal Industries, Inc. v. Gardner Bender, Inc., 612 F.2d 1018 (7th Cir. 1979) (finding with respect to the 71B series that "[a]lthough the numbers were chose arbitrarily in the sense that they do not refer directly to a characteristic of the connectors, the progression of numbers was adopted, and is currently used, to describe the relative sizes of the connectors. Hence, they are merely descriptive, not arbitrary, terms"); W.H. Brady Co. v. Lem Prod., Inc., 659 F. Supp. 1355, 1367 (N.D. Ill. 1987) (B-184 and B-500 used to designate products made of aluminum and vinyl, respectively, "are merely descriptive terms"); J.M. Huber Corp. v. Lowery, 778 F.2d 1467 (10th Cir. 1985) (holding part numbers (*e.g.*, A7S) are descriptive grade designations and that the designation, while arbitrary, was "not arbitrary in the trademark sense"); Armco Steel Corp. v. Watson, 188 F.Supp. 554 (D.D.C. 1960) (finding marks 17-4 PH and 17-7 PH was merely descriptive of steel products, because it merely identified the grade of the product); Nature's Bounty, Inc. v. Basic Organics, 432 F. Supp. 546 (E.D.N.Y. 1977) (finding B-100 to be "merely descriptive" because it merely described the ingredients and qualities of the vitamin product to which it has reference). Accordingly, T6 is merely descriptive of the lightbulb product to which it has reference because it is simply used to describe the size and type of a lightbulb.

A descriptive term may only be protected if it has acquired secondary meaning. Uncommon, LLC, 305 F. Supp. 3d at 856. "Secondary meaning exists only if most consumers have come to

---

[8] https://www.commercialbulbs.com/resources/shapes_and_bases
[9] Similarly, T6 is also a size designation for screwdriver fasteners. See, ISO 10664:2014 Hexalobular internal driving feature for bolts and screws

think of the word not as descriptive at all but as the name of the product." Id., *citing*, Packman. Courts generally review a number of factors to determine whether secondary meaning has been established, however, given the early stage of the current case and without any discovery obtained from Plaintiff, evidence of these factors is currently unavailable to Defendants. Id. Plaintiff's motion for entry of the preliminary injunction does not advance its mark's secondary meaning, and their complaint only states, in a conclusory fashion, that they had "expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the T6 Trademarks," and that products bearing the T6 trademarks are widely recognized and exclusively associated by consumers and the public as being sourced by Plaintiff. [Dkt. 1 ¶ 18]. However, the evidence currently available to Defendants clearly shows that the mark T6 is not exclusively associated by consumers and the public as being sourced by Plaintiff.

A mark acquires secondary meaning when it has been used "so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark." Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc., 149 F.3d 722, 728 (7th Cir. 1998). Here, the evidence available to Defendants, and now the Court, clearly shows that the term T6 has not "come to mean" lightbulb products sourced by Plaintiff in the minds of customers. A simple google search reveals that countless other companies use the term T6 while selling lightbulb products. **Exhibit AC**; *See*, Scandaglia v. Transunion Interactive, Inc., 2010 WL 3526653 at *7 (N.D. Ill. Sept. 1, 2010) (finding no secondary meaning in part because other companies used the mark for similar goods and services). In fact, companies such as Home Depot,[10] Lowes,[11] and Walmart[12] allows users to select "T6" as a general category of the "Light Bulb Shape Code" to narrow their

---

[10] https://www.homedepot.com/b/Lighting-Light-Bulbs-LED-Light-Bulbs/T6/N-5yc1vZbm79Z1z0vvr2
[11] https://www.lowes.com/pl/T6--Light-bulbs-Lighting-ceiling-fans/4294801215?refinement=3500580682
[12] https://www.walmart.com/c/kp/t6-light-bulbs

search to lightbulbs of this specific type and shape. This evidence clearly shows that customers have not come to think of the term T6 as the name of Plaintiff's products. Rather customers associate T6 with a lightbulb of a certain type and shape, in a descriptive sense, and not as a source identifier. Accordingly, since Plaintiff's asserted Marks are merely descriptive to light bulb products and lack secondary meaning, the asserted Marks are unprotectable and Plaintiff has no reasonable likelihood of success. Id. at *8 ("the Court holds that the mark is descriptive and lacks secondary meaning and therefore is not protectable.").

### III. Conclusion

Plaintiff's case is an attempt to prevent lawful sellers of basic consumer products from using well-known and industry-standard designations and descriptors. Plaintiff's own evidence demonstrates that Defendants were only using the designation "T6" to describe the LED light used within their flashlight products. After specific review of this issue and among these Defendants, the Court should dissolve the preliminary injunction that is wrongfully restraining Defendants' products.

Dated the March 14, 2023

Respectfully submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
Brian Swift
AU LLC
564 W. Randolph St. 2nd Floor
Chicago, IL 60661
adamu@au-llc.com
brians@au-llc.com
*Attorneys for Defendants*
